## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |
|---|---|
| AMERICAN WATER WORKS ASSOCIATION,<br><br><br>*Petitioner*,<br><br><br>*v.*<br><br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and JAMES PAYNE, in his official capacity as Acting Administrator, United States Environmental Protection Agency,<br><br><br>*Respondents*. | Case No. 24-1376 |

## RESPONSE TO MOTION FOR LEAVE TO INTERVENE AS RESPONDENTS

Pursuant to Federal Rule of Appellate Procedure 27(a)(3), Petitioner

American Water Works Association ("AWWA") hereby submits this response in

opposition to the motion for leave to intervene as respondents filed by New York, California, Connecticut, Illinois, Maryland, Massachusetts, Minnesota, New Jersey, North Carolina, Wisconsin, and the District of Columbia ("Movants" or "Movant States"). *See* Mot. of New York *et al*. for Leave to Intervene as Respondents (Jan. 13, 2025) ("Motion"). Movant States seek to intervene in this matter, which concerns AWWA's Petition for Review ("Petition") of the U.S. Environmental Protection Agency's ("EPA") final rule entitled "National Primary Drinking Water Regulations for Lead and Copper: Improvements (LCRI)," 89 Fed. Reg. 86,418 (Oct. 30, 2024) ("Final Rule"), and promulgated under the Safe Drinking Water Act ("Act"). AWWA respectfully requests that this Court deny the Movant States' motion for leave to intervene. This response is timely filed, as it has been filed with this Court "within 10 days after service of the motion." Fed. R. App. P. 27(a)(3)(A).

Movant States seek intervention as of right arguing that their "quasi-sovereign" and "proprietary" interests in reducing exposure to lead in drinking water will be impaired if this Court grants the Petition. Motion 19–24. But this assertion ignores the legal reality that the Movant States, save for the District of Columbia, have "primacy" under the Act and are free to pass identical or even more stringent requirements for lead in drinking water within their own sovereign borders regardless of the outcome of this case. And, while the District of Columbia does not have primacy, it appears to have the authority to mandate lead service line

replacement requirements within its jurisdiction. *See infra* Section I.B. This Court has already ruled in another case challenging EPA's lead and copper requirements under the Act that states lacked standing because "[n]othing prevents primacy states from meeting their obligations ahead of the federal deadline." *Arizona v. EPA*, 77 F.4th 1126, 1129 (D.C. Cir. 2023). Likewise, here any impairment to Movant States' interests would be "self-inflicted," as they are free to impose requirements regardless of the outcome of this case. *Id.* at 1129-30.

Moreover, Movants provided no evidence to support their asserted interests. The Motion makes one threadbare citation to one declaration, filed years ago in a separate action over a different rulemaking under the Act. *See* Motion 21. The declaration is notably absent of any discussion of harms to all but two of the Movant States, and makes no reference to the District of Columbia. The rest of the Motion is devoid of any other evidentiary support or citations—to EPA's decision-making process or anything else—that show how any of Movants' legally protected interests would be impaired if the Court were to grant the Petition. And even if the Petition somehow threatens the interests of the Movant States, the same evidentiary deficiencies in the Motion negate both their claim of inadequate representation and request for permissive intervention.

Because Movant States have failed to satisfy the standards for intervention, AWWA respectfully asks this Court to deny the Motion.

## LEGAL STANDARDS

Movant States seek to intervene in this matter pursuant to Federal Rule of Appellate Procedure 15(d) ("Rule 15"), which provides that a party wishing to intervene in a petition for review matter "must file a motion for leave to intervene . . . . within 30 days after the petition for review is filed." This motion "must contain a concise statement of the interest of the moving party and the grounds for intervention." *Id.* In addition, Federal Rule of Appellate Procedure 27 establishes general requirements for motions, including that "[a]ny affidavit or other paper necessary to support a motion must be served and filed with the motion." Fed. R. App. P. 27(a)(2)(B)(i).

This Circuit applies the intervention standards of Federal Rule of Civil Procedure 24 ("Rule 24") to Rule 15 motions for leave to intervene. *United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th 426, 432 (D.C. Cir. 2022); *see Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., AFL-CIO, Loc. 283 v. Scofield*, 382 U.S. 205, 217 n.10 (1965); *Bldg. & Constr. Trades Dep't, AFL-CIO v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994).

## ARGUMENT

### I. Movants Fail to Meet the Rule 24(a) Standards to Intervene as of Right.

Under Rule 24, entities that wish to intervene as of right must show: "(1) the application to intervene [is] timely; (2) the applicant [has] a legally protected interest

in the action; (3) the action [threatens] to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 192 (D.C. Cir. 2013) (quoting *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008)). Prospective intervenors "must satisfy all four elements of . . . Rule [24] in order to intervene as of right." *Jones v. Prince George's Cnty.*, 348 F.3d 1014, 1019 (D.C. Cir. 2003). Movant States have not done so.

### A. Movants Have Not Demonstrated Any Legally Protected Proprietary Interest at Stake.

Movant States claim various proprietary interests in reducing costs to address the harms posed by lead. Motion 19–21, 23–24. Movant States broadly claim "concrete regulatory, environmental, and economic interests" in this action, but they only identify amorphous "financial costs" to "address" the harms associated with lead in drinking water. *Id.* 19, 21. Movant States have failed to provide legal or factual support for the asserted interest, and thus failed to "demonstrate" such interests. Even states must introduce proof of their purported proprietary interests. *See Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216–17 (4th Cir. 1976) (affirming the denial of Virginia's motion for leave to intervene where Virginia failed to provide proof for its claim that its interests would be "impaired" by not intervening); *see also Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 821 (D.C. Cir. 2006) (highlighting where intervenors did not "introduce[] arguments *and*

*evidence* attempting to substantiate their 'hodge-podge' theory" (emphasis added)). Here, Movant States fail to submit *any* declarations that pertain to the Final Rule and that substantiate their asserted legally protected interests in this action. *See Deutsche Bank Nat'l Tr. Co.*, 717 F.3d at 192 (quoting *Karsner*, 532 F.3d at 885). Indeed, as is discussed further below, the District of Columbia is the only Movant State that does not have primacy under the Act, *see infra* Section I.B, and yet Movant States fail to provide *any* evidence addressing how this might distinguish the District of Columbia's interests from those of the other Movants or to in any way demonstrate costs that the District of Columbia will incur. As a result, the Movant States' potential proprietary interests cannot be assessed; the Court would be left guessing as to how the various states would actually be financially impacted by the disposition of this Petition.

The Movant States' speculative allegations of certain interests in this action "are not evidence" of such interests. *Sierra Club v. EPA*, 292 F.3d 895, 901 (D.C. Cir. 2002); *see also Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1327 (D.C. Cir. 2013). Although "motions to intervene are usually evaluated on the basis of well pleaded matters," *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981), they should be denied where, as here, Movants "provide[] no more than speculation to support" the alleged existence of a legally protected interest, *Defs. of Wildlife*, 714 F.3d at 1327, or "introduce[] no evidence whatsoever to support [their] claim," *Am.*

*Chemistry Council*, 468 F.3d at 821 (concluding intervenors failed to establish standing); *see also Sierra Club*, 292 F.3d at 901 (noting that "mere allegations" in a brief "are not evidence"); *United States v. Franklin Par. Sch. Bd.*, 47 F.3d 755, 757 (5th Cir. 1995) (analyzing movant's alleged interests under Rule 24 and stating, "[movant] is not entitled to intervene based merely on conclusory allegations").

Movant States do cite to one declaration to support their contention that the Final Rule will reduce costs to the Movant States "includ[ing] increased costs for medical treatment (Medicaid) and special education programming for children who suffer from high lead levels," as well as costs borne by "states and local governments" for "when they are forced to respond to crises caused by lead contamination in drinking water from lead service lines." Motion 21. However, this declaration was specifically made with respect to a *different* rule that preceded the Final Rule, not the Final Rule itself. *See* Declaration of Jodi Feld, ¶ 8 (Aug. 8, 2022) ("I submit this affidavit in support of the State Petitioners' standing to sue the . . . []EPA[] over its Rule, 'National Primary Drinking Water Regulations: Lead and Copper Rule Revisions'"), in support of Initial Opening Brief of State Petitioners in *Newburgh Clean Water Project et al. v. EPA*, No. 21-1019 (D.C. Cir.), Doc. # 1958332. The only cited paragraphs that do pertain to specific states discuss New York, *see id.* ¶¶ 16, 22–23, 25, 28, 32, and Michigan-related facts, *see id.* ¶¶ 33–35. None of the Movant States besides New York are specifically addressed in these

cited paragraphs. Further, the majority of the paragraphs cited by the Movant States within this declaration are broad and do not discuss facts specific to individual Movant States. *See id.* ¶¶ 17–21, 24, 26–27, 29–31. The declaration was signed in 2022 and has not been updated, making it unclear what regulatory actions may have happened in New York—let alone any other Movant States—that would explain to the Court why the current standards in those states differ from the Final Rule in a way that would give rise to the asserted proprietary interests. *See id.* at 18. As such, this declaration is wholly inadequate to demonstrate to the Court the specific proprietary interests that the Movant States purportedly have in this action.

In contrast to the Movant States, three environmental nongovernmental organizations ("ENGOs") filed a motion for leave to intervene in this matter with ten declarations attached. *See* Mot. of ENGOs for Leave to Intervene in Support of Respondents A1–A37 (Dec. 20, 2024) ("ENGOs Motion"). These declarations provide evidence for the ENGOs' assertions, including, for example, with respect to the ENGOs' having standing to intervene in this case. *See, e.g.*, *id.* 12. AWWA did not oppose the ENGOs' motion for leave to intervene. However, because the Movant States, unlike the ENGOs, have not and cannot meet this burden, AWWA has filed this response and respectfully requests the Court to deny the Motion.[1]

---

[1] As explained *infra* in Section I.B, Movant States could not meet this burden even if they were to provide declarations. And to the extent the Movant States may try to address these deficiencies and substantiate their conclusory allegations about their

8

**B. The Disposition of this Petition Does Not Threaten Movant States' Purported Interests Because They Are Free to Pass Identical or More Stringent Requirements.**

In the event the Court concludes that the Movant States have adequately

established any proprietary or "quasi-sovereign" interests,[2] the Movant States still

_____

proprietary interests in a reply, that attempt should fail. It is axiomatic that litigants forfeit arguments first made in a reply brief. *See, e.g.*, *Sierra Club*, 292 F.3d at 900–01 (explaining, in the context of standing, that petitioners whose injuries are not self-evident should establish these injuries "by the submission of its arguments and any affidavits or other evidence appurtenant thereto at the first appropriate point in the review proceeding," such as in an "opening brief—and not, as in this case, in reply"). Although the evidentiary deficiencies in the Motion manifest in the context of a request for intervention, the same concerns from *Sierra Club* are pertinent here. *Id.* at 901 ("[A]ll too often the petitioner does not submit evidence of those facts with its opening brief and the respondent is therefore left to flail at the unknown in an attempt to prove the negative."); *see also Grant v. U.S. Air Force*, 197 F.3d 539, 542 n.6 (D.C. Cir. 1999) ("[O]ur caselaw makes clear that an argument first made in a reply brief comes too late."); *Ohio v. EPA*, 98 F.4th 288, 309 (D.C. Cir. 2024); *Nat'l Steel & Shipbuilding Co. v. NLRB*, 156 F.3d 1268, 1273 (D.C. Cir. 1998); *cf. Wilton Indus., Inc. v. United States*, 310 F. App'x 366, 367 (Fed. Cir. 2008) (citing Federal Rule of Appellate Procedure 27(a)(2)(B) and dismissing the United States's appeal where the government filed a motion for stay that was "cursory and lacks supporting argument or documentation").

[2] While the Movant States do not mention *parens patriae*, which is a type of "lawsuit" that "allows a State to sue in a representative capacity to vindicate its citizens' interests," *Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 178 (D.C. Cir. 2019), they do assert "quasi-sovereign interests in protecting the health and safety of [their] residents from lead in drinking water," Motion 23. Such quasi-sovereign interests form the basis for *parens patriae* actions. *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982). Therefore, it is unclear whether the Movant States seek to assert quasi-sovereign interests in service of a *parens patriae* intervention. Regardless, the Movant States fail to demonstrate that the disposition of AWWA's petition would threaten any of their interests. *Cf. Nat'l Fair Hous. All. v. Carson*, 330 F. Supp. 3d 14, 65–66 (D.D.C. 2018) (concluding New York failed to demonstrate *parens patriae* standing where the state did "not satisf[y]

fail to sufficiently establish that this action threatens such interests. Movant States aver that their "interests would be impaired were the Rule to be vacated." Motion 21. In particular, the Movant States highlight the Final "Rule's lead service line replacement requirements," *id.*, arguing that their "interests in this core component of the Rule . . . would be impaired if the petition is granted and the Rule set aside, making intervention warranted here," *id.* 22. Not so: all but one of the Movant States has primacy under the Act, while the District of Columbia is statutorily eligible to achieve primacy, *see* 42 U.S.C. § 300f(13)(A) (defining "State" to include the District of Columbia); *id.* § 300g-2 ("[A] *State* has primary enforcement responsibility for public water systems during any period for which the Administrator determines . . . that such State . . ." (emphasis added)), and appears to be able to mandate lead service line replacement within its borders, *see* D.C. Code § 34-2158(a)(1) (addressing "[f]ull lead water service line replacement" and providing that, with exceptions, "the District of Columbia Water and Sewer Authority ('DC Water') shall not replace the portion of a water service line that is on public property unless it also replaces the portion of the lead water service line that is on private

---

its burden of showing '[a] quasi-sovereign interest' that is 'sufficiently concrete to create an actual controversy between the State and the defendant,'" and denying the state's motion to intervene (second alteration in original) (quoting *Alfred L. Snapp & Son, Inc.*, 458 U.S. at 601)).

property, if any, subject to the consent of the property owner"). Indeed, as DC Water recently stated:

> District of Columbia lawmakers are currently working on a mandate that *requires* property owners in the District to replace lead service lines . . . . The most impactful components of the potential legislative mandate pending before the Council of the District of Columbia include, but are not limited to, the following requirements: 1. A *requirement* to remove lead service lines from public property, District government buildings and privately owned properties by January 1, 2030.[3]

Accordingly, Movant States retain the right to pass requirements identical to, or even more stringent than, the Final Rule and are therefore free to ensure any degree of protections they see fit within their own borders, regardless of the disposition of this case. *See* 42 U.S.C. § 300g–2(a); *Arizona*, 77 F.4th at 1128 ("But states always may exceed the federal floor; regardless of any change in the national regulations, states may increase the stringency of their own regulations at any time.").

Under the Act, Movant States are permitted to assume "primary enforcement responsibility for public water systems," also known as primacy, if they satisfy certain requirements, including "adopt[ing] drinking water regulations that are no less stringent than the national primary drinking water regulations." 42 U.S.C.

---

[3] DC Water, Lead Service Line Replacement Plan 16 (2023) (emphasis added), https://www.dcwater.com/sites/default/files/2023%20LFDC%20Plan%20FINAL%206.29.2023.pdf.

§ 300g–2(a); *see generally Nat'l Wildlife Fed'n v. EPA*, 980 F.2d 765, 768 (D.C. Cir. 1992). As previously noted, all Movant States, except for the District of Columbia, have achieved primacy. *See* 89 Fed. Reg. at 86,571 n.14; *Arizona*, 77 F.4th at 1128.[4]

Through this primacy scheme, the Act establishes a floor for the regulation of public water systems, and states are permitted at any time to promulgate their own drinking water laws and regulations if they are at least as stringent as the minimum federal standards. *See* 42 U.S.C. § 300g–2(a). As a result, this Court recently dismissed several states' petition for review of a rule delaying the predecessor to the Final Rule for lack of Article III standing. *See Arizona*, 77 F.4th at 1129. As this Court explained:

> Nothing prevents primacy states from meeting their obligations ahead of the federal deadline. The petitioners here thus complain about having a choice, but not a duty, to take more time to begin enforcing regulations conforming to the Revision Rule. Like the hypothetical litigant given an extended briefing deadline, the states cannot show that this extension causes them an injury. And absent an injury traceable to the Delay Rule and redressable by an order setting it aside, the states lack standing to challenge that rule.

*Id.*

---

[4] And as noted above, *supra* Section I.A, no evidentiary support has been provided related to any potential proprietary or quasi-sovereign interest of the District of Columbia related to this Final Rule.

The same logic compels the denial of Movant States' Motion here: That all Movant States are, have been, or would be free at any time to enact regulations that are just as stringent as the Final Rule, if not more stringent, undercuts the Movant States' sweeping claim that their interests would be impaired were AWWA's Petition granted. *See* Motion 22; *compare* DC Water, *supra* note 3, at 16 (highlighting District of Columbia lawmakers' "potential legislative mandate" including the "requirement to remove lead service lines . . . by January 1, 2030"), *with* 89 Fed. Reg. at 86,419 (discussing "five focus areas" of the Final Rule, including "achieving lead pipe replacement within 10 years"). Put differently— irrespective of the outcome of this Petition—there is nothing stopping the Movant States from adopting regulations that achieve the same goals, and protect the same interests, described in the Motion. *See Arizona*, 77 F.4th at 1128.

Indeed, as EPA itself acknowledges in the Final Rule, a number of states (Illinois, Michigan, New Jersey, and Rhode Island) have *already* passed laws and regulations that require mandatory lead service line replacement, including two of the Movant States here. *See* 89 Fed. Reg. at 86,447. As is noted in the Final Rule, "Michigan requires replacement of all lead and galvanized previously downstream of [lead service lines] starting in 2021, to be completed by 2041," while "Illinois requires replacement of all [lead service lines] starting in 2027, with the timeline determined by the number of lead and galvanized lines (if the galvanized lines are

downstream of lead)," and "New Jersey and Rhode Island require all [lead service lines] and galvanized service lines (irrespective of whether there is or was an upstream [lead service line]) to be replaced in 10 years unless the system is granted an extension by the State." *Id.* at 86,457. For comparison, the Final Rule will generally require water systems to replace lead service lines within 10 years. *See id.* at 86,419. That these four states have already instituted mandatory lead service line replacement programs, which in some cases will result in lead service line replacement within the *same timeframe* as the Final Rule, illustrates the viability of the Movant States promulgating their own regulations to address the very harms they claim will result from granting the Petition. *See id.* at 86,457 ("Michigan and New Jersey have several years of experience implementing their service line replacement laws that were promulgated in 2021, demonstrating the feasibility of the States' replacement requirements."). This is particularly true considering the fact that Illinois and New Jersey are members of the group of Movant States. *See* Motion 28, 30.

Nor have Movant States alleged any kind of interstate or downstream harms that might stem from a failure to regulate beyond their own borders that might impact their citizens. And for good reason: lead contamination is a highly localized issue, meaning that each of the Movant States is capable of remedying the harms it alleges through its own legislative and regulatory actions. The Act's unique primacy

scheme, and the nature of lead contamination, makes this case fundamentally different from the regulatory schemes at issue in *Air Alliance Houston v. EPA*, 906 F.3d 1049 (D.C. Cir. 2018), *Fund for Animals, Inc. v. Norton*, 322 F.3d 728 (D.C. Cir. 2003), and *Crossroads Grassroots Policy Strategies v. Federal Election Commission*, 788 F.3d 312 (D.C. Cir. 2015). In each of those cases, states alleged harms that could not be ameliorated with the kind of primary regulatory authority contemplated in the Act. *See Fund for Animals*, 322 F.3d at 733 (addressing intervention in an Endangered Species Act case and discussing movant's argument that it satisfied Article III standing "because fees paid by sport hunters are the primary source of funding for its argali conservation program," and, if appellees successfully "barr[ed] American hunters from bringing their trophies home, some hunters w[ould] not travel to Mongolia to hunt the argali, and the revenues that support the conservation program w[ould] decline"); *Crossroads Grassroots Pol'y Strategies*, 788 F.3d at 316–19 (analyzing Article III injury relevant to a motion to intervene in a suit challenging a decision by the Federal Election Commission favorable to movant, where the court concluded that an adverse ruling would expose movant to enforcement risks). Even where, as in *Air Alliance Houston*, the proposed intervenors were not the direct subject of the regulation, they were able to substantiate their claims of threatened harm with supporting materials, including "[s]everal declarations." 906 F.3d at 1059.

### C. Movants Have Not Shown a Lack of Adequate Representation

Movant States have also failed to show inadequate representation by the existing parties. In this Circuit, the lack of adequate representation is "a defining feature of intervention as of right." *Smoke v. Norton*, 252 F.3d 468, 470 (D.C. Cir. 2001). Although "minimal," the "original burden of showing inadequate representation rests on the applicant for intervention." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986); *see Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Moreover, "the mere fact that there is a slight difference in interests between the applicant and the supposed representative does not necessarily show inadequacy, if they both seek the same outcome." *Nuesse v. Camp*, 385 F.2d 694, 703 (D.C. Cir. 1967).

Movant States fail to meet even the "minimal" burden to show that EPA will inadequately represent their interests. Movant States acknowledge that they are "generally aligned" with EPA because they seek to deny the petition, and yet they claim that their "proprietary interests . . . are distinct from EPA's interests." Motion 23–24. Again, Movant States fail to produce any evidence about their proprietary interests, nor do they explain how these interests cause divergence from those at EPA. This is plainly insufficient to meet even the "minimal" burden that Rule 24 requires. *See Bldg. & Constr. Trades Dep't, AFL-CIO*, 40 F.3d at 1282 (upholding denial of intervention where the movant "offered no argument not also pressed" by

the existing party); *Blake v. Pallan*, 554 F.2d 947, 955 (9th Cir. 1977) (holding that where "[t]here is no evidence that the [existing parties] are incapable of adequately representing the [movant's] interests or that they are unwilling to do so," intervention should be denied); *Aref v. Holder*, 774 F. Supp. 2d 147, 172 (D.D.C. 2011) (observing that applicants who "have not stated what their interests are or how they differ from those of the [existing parties]" do not demonstrate inadequate representation).

Because of these evidentiary failures, AWWA and this Court are left to speculate about how Movants' positions will align, if at all, with those of EPA. Movant States state that they and EPA "*may* choose to advance different arguments or make different strategic choices in this litigation." Motion 24 (emphasis added). This statement is glaring for two reasons. First, the uncertainty impedes this Court's ability to determine whether the arguments of Movant States will be cumulative of the arguments advanced by EPA. *See Env't Def. Fund, Inc. v. Costle*, 79 F.R.D. 235, 243 (D.D.C.), *aff'd*, 12 ERC 1255 (D.C. Cir. 1978) (unpublished) (per curiam); *see also United States v. Int'l Tel. & Tel. Corp.*, 349 F. Supp. 22, 27 n.4 (D. Conn. 1972) ("The potential obstruction and delay which may be caused by allowing a person to intervene as a party . . . fully justify the requirement that [it] make a clear showing rather than a mere allegation that [its] interest is not adequately represented by an existing party to the suit."). Second, different litigation tactics "do[] not make

inadequate the representation of those whose interests are identical with that of an existing party or who are formally represented in the lawsuit." *Jones*, 348 F.3d at 1020 (quoting 7C Wright & Miller, Federal Practice & Procedure § 1909, at 344 (2d ed. 1986)).

Finally, Movant States suggest that a "change in presidential administration" makes it "unclear" if EPA will continue defending the Final Rule. Motion 24. This remaining, threadbare assertion of inadequacy fares no better because the Movant States fail to identify any *actual* change in the agency's position and leave it to this Court to again speculate whether their interests are, or will be, inadequately represented. *See Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979) (holding that applicants "must produce something more than speculation as to the purported inadequacy"). Accordingly, because the Movant States have not met their minimal burden to demonstrate that EPA is incapable of inadequately representing their interests, the Court should deny them intervention as of right.

## II. The Court Should Deny Permissive Intervention

Movant States similarly fail to justify permissive intervention in this matter. Courts "have the discretion . . . to deny a motion for permissive intervention even if the movant established an independent jurisdictional basis, submitted a timely motion, and advanced a claim or defense that shares a common question with the

main action." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1048 (D.C. Cir. 1998). Notably, the Court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," Fed. R. Civ. P. 24(b)(3), but it may also consider "whether parties seeking intervention will significantly contribute to . . . the just and equitable adjudication of the legal questions presented," *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986) (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)); *see also Env't Integrity Project v. McCarthy*, 319 F.R.D. 8, 12 (D.D.C. 2016) (quoting *Sierra Club v. McCarthy*, 308 F.R.D. 9, 12 (D.D.C. 2015)).

As explained above, AWWA is left to speculate about the various ways in which Movant States "may" advance arguments or pursue litigation tactics different from EPA. *See supra* Section I.C. This is unduly prejudicial to AWWA and impacts its ability to prepare and assess its own litigation strategy, including whether it will need to respond to multiple intervenor briefs and whether those briefs will inject collateral or duplicative issues into this case. Indeed, any duplicative briefs would not be likely to "significantly contribute to the just and equitable adjudication of the legal question[s] presented." *Env't Integrity Project*, 319 F.R.D. at 12. And to the extent Movant States suggest that their "quasi-sovereign" or "proprietary" interests do so, those allegations remain too conclusory and speculative to be helpful to this Court's adjudication. *See supra* Sections I.A, I.B; *Ctr. for Biological Diversity v.*

*EPA*, 274 F.R.D. 305, 313 (D.D.C. 2011) (explaining that where "movants offer no more than conclusory assertions that their participation will be helpful, [they] fail to demonstrate an ability to contribute to the full development of the factual and legal issues presented" (internal quotation marks and citations omitted)). The Court should therefore deny Movant States permissive intervention.

## CONCLUSION

For the foregoing reasons, AWWA respectfully requests that this Court deny the Movant States' motion for leave to intervene.[5]

Dated:  January 23, 2025                    Respectfully submitted,

                                            */s/ Corinne V. Snow*

                                            Ronald J. Tenpas
                                            Corinne V. Snow
                                            Aaron Silberman
                                            Hannah Flesch
                                            VINSON & ELKINS LLP
                                            2200 Pennsylvania Avenue NW
                                            Suite 500 West
                                            Washington, DC 20037
                                            Phone: (202) 639-6622
                                            Fax: (917) 879-8998
                                            Email: rtenpas@velaw.com
                                            Email: csnow@velaw.com

---

[5] AWWA respectfully suggests that Movant States would be permitted to participate in this case in an amicus curiae capacity, rather than as intervenors. *See* Fed. R. App. P. 29(a)(2) ("[A] state may file an amicus brief without the consent of the parties or leave of court."). To the extent Movant States would provide outside perspectives that are relevant and unique in this matter, AWWA would not oppose such participation as amicus curiae.

Email: asilberman@velaw.com
Email: hflesch@velaw.com

*Counsel for Petitioner American Water Works Association*

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) and D.C. Circuit Rule 27(a)(2). It contains 4,896 words excluding the parts of the response exempted by Federal Rule of Appellate Procedure 32(f).

The response also complies with Federal Rule of Appellate Procedure 32(a)(5)'s typeface requirements and Federal Rule of Appellate Procedure 32(a)(6)'s type style requirements because the response has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

## CERTIFICATE OF SERVICE

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure, I hereby certify that on January 23, 2025, I electronically filed the foregoing Response to Motion for Leave to Intervene as Respondents with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system, and served copies of the foregoing via the Court's CM/ECF system on all ECF-registered counsel.

Dated:  January 23, 2025

Respectfully submitted,

*/s/  Corinne V. Snow*
Corinne V. Snow

*Counsel for Petitioner American Water Works Association*